IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMIE PAUL DESPER<br>a/k/a James Paul Desper,<br>    Plaintiff,<br><br>v.<br><br>MEGAN DEMASTUS, *et al.*,<br>    Defendants. | Civil Case No. 7:20-cv-00749<br><br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION**

Jamie Paul Desper, a Virginia inmate proceeding *pro se*, has filed a complaint under 42 U.S.C. § 1983, naming five defendants. The case is before the court for review pursuant to 28 U.S.C. § 1915A(a). For the reasons set forth herein, the court concludes that Desper's complaint must be dismissed in its entirety.

I.  BACKGROUND

Desper's complaint contains a section labeled "introduction," which states his lawsuit is

> a civil rights action . . . for damages, declaratory and injunctive relief under 42 U.S.C. § 1983, alleging a violation of the association clause of the First Amendment, the Due Process clause of the Fourteenth Amendment and his rights to companionship and to control the care, custody, and upbringing of his daughter, C.M.F. for the termination of his parental rights without adequate due process and the Department of Social Services['] refusal to adequately investigate placement with her biological grandmother and that Mr. Desper was never afforded a reasonable opportunity to develop close relations with his daughter [hereinafter "the Child"].

(Compl. 1–2, Dkt. No. 1.)[1]

---

[1] Rule 5.2(a)(3) of the Federal Rules of Civil Procedure requires that any court submissions referring to a minor must only include the minor's initials. Similarly, General Rule 8 of the Local Rules of this court requires parties to omit, black out, or abbreviate personal data identifiers, including social security numbers, names of minor children, dates of birth, and home addresses. Some of the exhibits attached to the complaint fail to comply with this requirement and instead include the full names and dates of birth (as well as other sensitive information) about minor children. The Court is therefore limiting electronic access to plaintiff's complaint and attached exhibits to a "case-participant only" basis.

His complaint names the following five defendants:

1. Megan Demastus, a social worker employed by Shenandoah Valley Social Services, who was assigned to the Child's case;
2. Victor Ludwig, a now-retired state court judge who presided over the proceeding that terminated Desper's parental rights;
3. Shelton Burns, the Child's foster father;
4. Valeria Burns, the Child's foster mother; and
5. Deana Morris, the Child's biological mother.

(*Id.* at 3–4.) The Burnses sought to adopt the Child, but it is unclear from the complaint whether the adoption has yet been finalized.

In general terms, Desper alleges that all of these individuals either took steps, or failed to take steps, that resulted in his parental rights being terminated and the Child being placed for adoption by non-relatives. He alleges that he was working with his own mother, Mrs. Desper, to have the Child placed with her, but that defendant Demastus would not return his mother's phone calls or answer her questions about the home study Mrs. Desper was to complete. He alleges that Judge Ludwig did not consider all the appropriate factors for child placement and did not require "social services to do an adequate investigation for placement" of the Child with his mother. He also alleges that the foster parents told him they would give the Child letters that he sent them and would send him pictures of her, but they failed to do so. He further alleges, without specific factual allegations, that Morris, the Child's biological mother, "conspired with the state" to violate his rights to association with the Child. (*Id.* at 14.)

For relief, Desper asks for a declaratory judgment stating that all defendants violated his rights to association with the Child under the First Amendment, and that Demastus and Ludwig violated his due process rights. He also asks for an injunction ordering the social worker and adoptive parents to "enter into a post-adoption contact agreement to allow Mr. Desper to have

2

contact with [the Child]." (*Id.* at 15.)[2] In attached letters, he asks that the adoptive parents also allow the Child to have contact with his mother and the Child's half-sister, who lives with his mother. He also seeks compensatory and punitive damages. (*Id.*)

## II. DISCUSSION

Under 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring court, in a case where a plaintiff is proceeding *in forma pauperis*, to dismiss the case if it is frivolous or fails to state a claim on which relief may be granted). Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). "To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted).

Desper's complaint is subject to dismissal on numerous grounds. As an initial matter, the court concludes that it should—or must—decline to exercise jurisdiction over this case because Desper's complaint, although couched as a § 1983 action, is effectively challenging the state

---

[2] Desper is currently serving a lengthy sentence of "20 years on each of three convictions for violations of Va. Code Ann. § 18.2-61 (forcible rape), to run consecutively, with 15 years on each conviction suspended, and an additional 3 years on a conviction for a violation of Va. Code Ann. § 18.2-472.1 (violent sexual offender's failure to register)." (Dkt. No. 1-3 at 75.) Publicly available information from the Virginia Department of Corrections lists his estimated release date as July 17, 2026.

court's child custody determination and seeking injunctive relief in the form of a court order requiring that he be permitted contact with the Child. Federal courts frequently refrain from ruling in cases directly concerning domestic issues such as child custody, whether that is the result of application of the "domestic relations exception to federal jurisdiction," some type of abstention, the *Rooker-Feldman* doctrine, or application of *res judicata* principles. *See Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992) (concluding federal jurisdiction was appropriate over tort claims brought against parent with custody, and explaining that the "domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree"); *id.* at 705–06 (explaining that abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), "might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody" if the case "presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar").

      Turning first to whether the court has jurisdiction over the case, the circuits appear to be split as to whether the "domestic-relations exception" to jurisdiction applies only in cases where jurisdiction is premised on diversity, or applies to both federal-question and diversity suits. *See Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2018) (taking the former approach, but noting that the Seventh Circuit takes the latter approach) (citing *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018)). The Fourth Circuit has been less clear on the issue. In 1997, it stated, albeit arguably in dicta, that the domestic relations exception "is applied only as a judicially implied limitation on the diversity jurisdiction; it has no generally recognized application as a limitation on federal question jurisdiction." *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997); *see also Johnson v. Byrd*, No. 1:16CV1052, 2016 WL 6839410, at *12 (M.D.N.C.

Nov. 21, 2016) (making the case for why the statement was dicta).  The Fourth Circuit more recently cited to that same dicta from the *Johnson* decision, but that was in an unpublished, non-precedential decision.  *Reale v. Wake Cty. Human Servs.*, 480 F. App'x 195 (4th Cir. 2012) (citing *Johnson*).  Accordingly, whether the exception has applicability in federal-question cases arguably remains an open question in this circuit.  See *Johnson*, 2016 WL 6839410, at *12–*13 (discussing subject at length).

      Assuming that the domestic relations doctrine is not strictly applicable in federal - question cases, it is still possible for the court to abstain from exercising jurisdiction, a concept long endorsed by the Fourth Circuit in the context of family-law issues.  Forty years ago, the Fourth Circuit held that "federal habeas corpus is not available in suits between private parties where the object of the suit is to ascertain the custody of a child, or the right to rear the child . . . ."  *Doe v. Doe*, 660 F.2d 101, 105 (4th Cir. 1981).  In doing so, the court relied on general cases regarding the domestic relations exception, noting that the Supreme Court "has long held that the federal courts have no jurisdiction to hear domestic relations matters."  *Id.*  The *Doe* court further reasoned:

> This Court has consistently acknowledged and upheld this lack of federal court jurisdiction in the area of domestic relations.  In *Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980), we noted that federal courts must be alert to keep genuinely domestic matters such as "child custody," p. 1088, out of the federal courts.

*Id.*  The court thus concluded that, while jurisdiction may arguably exist because the case was brought under the federal habeas statute, "the district court clearly erred by exercising any jurisdiction it might have had. . . .  Reason and precedent both dictate that in this, a purely custodial case between private parties, that the federal courts not intervene."  *Id.* at 105–06.

      Although couched as constitutional violations, Desper's claims are really objections to

the termination of his parental rights and the determination that the Child would not be placed with his mother. He also requests visitation rights despite the termination of his parental rights, which is also a custody issue. Relying on *Doe*, district courts within the Fourth Circuit have refused to address similar issues in other cases. *E.g.*, *Roe v. Jenkins*, No. 1:20-CV-140, 2021 WL 1026524, at *3 (N.D.W. Va. Mar. 17, 2021) ("A court's determination of whether the Plaintiff or Defendant is entitled to child custody, care, and control is a custodial matter between private parties, a matter in which "the federal courts [do] not intervene.") (quoting *Doe*, 660 F.2d at 106). *Accord Deem*, 941 F.3d at 621–22 (concluding that the "domestic relations *abstention* doctrine"—not the jurisdictional exception—applies in federal-question cases and the district court properly abstained from hearing the plaintiff's claims, which included a father's § 1983 claim that persons involved in the family court proceedings violated his First Amendment right to association with this children). Thus, regardless of whether the court truly lacks jurisdiction, the court concludes that it should abstain from deciding the questions raised by Desper, as they directly implicate the state court's custody determinations.

The court further concludes that it is barred from considering Desper's claims pursuant to the *Rooker-Feldman* doctrine.[3] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that under the *Rooker-Feldman* doctrine, federal districts courts do not have subject matter jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). Other courts, including the Fourth Circuit and district courts within it, have concluded that the *Rooker-Feldman* doctrine would bar a federal court's consideration of claims like Desper's. *Stratton v. Mecklenburg Cty.*

---

[3] The doctrine is based on *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

*Dep't of Soc. Servs.*, 521 F. App'x 278, 291 (4th Cir. 2013) (holding that, because the plaintiff's "due process claim is a mere pretext for the real focus of the [c]omplaint, which challenges the validity of records and proceedings of the North Carolina courts that resulted in the termination of the [plaintiff's] parental rights," the *Rooker-Feldman* doctrine bars consideration of that claim). *Johnson v. Byrd*, No. 1:16CV1052, 2016 WL 6839410, at *7 (M.D.N.C. Nov. 21, 2016), *subsequently aff'd,* 693 F. App'x 219 (4th Cir. 2017); *Davis v. Singer*, No. 4:13cv7, 2014 WL 12598862 (E.D. Va. Aug. 5, 2014) (concluding that the *Rooker-Feldman* doctrine precluded consideration of plaintiff's civil rights complaint, which effectively challenged the termination of his parental rights and explaining that "a plaintiff may not seek a reversal of a state court judgment simply by recasting his complaint in the form a civil rights action pursuant to 42 U.S.C. § 1983") (quotation and citation omitted); *Powell v. Williams*, No. 5:14-CV-282, 2014 WL 3809964, at *3 (E.D.N.C. July 14, 2014) (holding that, "to the extent such [child custody or child support] matters have been determined by the state court, this court is . . . barred by the *Rooker–Feldman* doctrine from reviewing the state court's decisions").[4]

---

[4] Even before *Feldman*, courts have reached the same result, but couched it as a matter of res judicata. In *Castorr v. Brundage*, 674 F.2d 531 (6th Cir. 1982), for example, the natural parents sought declaratory, injunctive, and monetary relief against a juvenile judge and foster parents following termination of their parental rights. In concluding that the plaintiff's claims were barred, the *Castorr* court noted that the issue of proper custody for the minor child already had been litigated in state court. It then explained:

> We do not foreclose the possibility that certain § 1983 claims might not be barred by res judicata under proper circumstances. We hold only that the facts of this case do not present a proper situation in which to find an exception to the principles of res judicata.
>
> Cases involving matters of . . . domestic relations, as in the present proceeding, present situations in which the importance of finality is compelling. Further, in these types of cases, federal courts historically have deferred to the expertise of State courts, and have avoided accepting jurisdiction under the principles of comity. Thus, substantive federal policy supports the application of res judicata to the § 1983 constitutional claims of appellants.

*Castorr*, 674 F.2d at 536–37. The same is true here. Desper had a full and fair opportunity to contest both the termination of his rights and the placement of the Child with his mother in state court, and the state court ruled against him. He may not now relitigate those claims before this court. *See id.*

7

Desper seeks to challenge either the termination of his parental rights, or, at a minimum, seeks modification of the custody award (and subsequent adoption) to allow him visitation, despite that termination of rights. Thus, he is effectively seeking a re-determination of issues already determined by the state court, which the *Rooker-Feldman* doctrine prohibits.

For all of the foregoing reasons, the court likely has subject-matter jurisdiction, but nonetheless abstains from exercising that jurisdiction. The *Rooker-Feldman* doctrine also bars consideration of Desper's claims.

**B.     Other Grounds for Dismissal**

Even if the above-mentioned jurisdictional and abstention doctrines did not preclude this court from adjudicating Desper's claims, his claims against all of these defendants also fail for other reasons, as the court discusses next.

**1.  Judge Victor**

Desper's claims against Judge Victor fail because Judge Victor is entitled to absolute judicial immunity. Judicial immunity clothes judges with absolute immunity from liability in damages for their judicial or adjudicatory acts. *Forrester v. White*, 484 U.S. 219, 225–26 (1988). Judicial immunity is an absolute defense, not merely to liability or damages, but a defense to suit under 42 U.S.C. § 1983. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

There are two possible exceptions to judicial immunity. Specifically, it does not shield a judge for (1) non-judicial acts; or (2) acts taken in the clear absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Neither exception applies here. The actions that Desper challenges—the order terminating his parental rights and the rejection of the Child's placement with Mrs. Desper—clearly were judicial acts because they were "function[s] normally performed by a judge" and Desper "dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12

(citing *Stump v. Sparkman*, 435 U.S. 349, 360 (1978) as identifying these two factors used to determine whether an act is a judicial one). Desper does not allege that Judge Victor lacked jurisdiction to rule, either, so the second exception does not apply. Accordingly, Judge Victor is entitled to judicial immunity, and the claims against him fail.

### 2. Shelton and Valeria Burns and Morris

Desper's claims against the foster parents and Morris (the Child's biological mother) fail because those defendants are private parties and did not act under color of state law. A private actor can be considered to act under color of state law "only if . . . there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quotation omitted). Although the nexus inquiry is necessarily fact-intensive, courts have applied the relevant factors, which are set forth in *Brentwood*, and "consistently held that the decisions of foster parents are not state actions." *Anderson v. Nebraska*, No. 4:17-CV-3073, 2018 WL 3009115, at *8 (D. Neb. June 15, 2018) (collecting authority). The Fourth Circuit, too, concluded in at least one case that the defendant foster parents were not state actors. *Milburn v. Anne Arundel Cty. Dep't of Soc. Servs.*, 871 F.2d 474, 479 (4th Cir. 1989); *see also Rayburn v. Hogue*, 241 F.3d 1341 (11th Cir. 2001) (reversing district court and concluding that foster parents were not state actors for purposes of § 1983).

Desper's complaint provides no facts that would establish a sufficient nexus between the actions of the Burnses or Morris so as to make any of them state actors. Accordingly, they cannot be held liable under § 1983 and no federal claim has been stated against them.

### 3. Demastus

As for the only remaining defendant, the social worker Ms. Demastus, the court assumes

9

for purposes of this opinion that she acted under color of state law. But any claims against her are clearly time-barred, based on the plain allegations of the complaint and the exhibits attached thereto. They are subject to dismissal for this reason, as well.

A court may summarily dismiss a § 1983 complaint when it is clear from its face that it is barred by the applicable statute of limitations. *Cf. Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 956 (4th Cir. 1995) (en banc). A § 1983 claim based on events that occurred in Virginia is subject to Virginia's statute of limitations for general personal injury claims, *see Owens v. Okure*, 488 U.S. 235, 239–40 (1989), which requires an action be brought within two years of its accrual. Va. Code Ann. § 8.01-243(A); *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (explaining that the statute of limitations for § 1983 claims is the state limitations period for personal injury actions and in Virginia, that period is two years).

Desper's complaint and its attached exhibits contain a number of court documents in the custody case and orders entered by Judge Ludwig. Judge Ludwig's March 15, 2018 letter opinion (Dkt. No. 1-3, at 74-79) sets forth the somewhat confusing procedural background in the custody case, and some of the procedural quirks that occurred in the course of the case. The court will not rehash them here. In any event, it is clear that as of March 15, 2018, Desper's parental rights had been terminated and his appeal of that ruling had been denied, and it also was clear that the Child would not be placed in Mrs. Desper's home. *See id.* Desper's complaint does not allege that Demastus took any actions after that date that he believes violated his constitutional rights. Indeed, his complaint, which is in chronological order, states that at some point between the March 15, 2018 order and September 25, 2018, Demastus was no longer assigned to the Child's case. That was more than two years before Desper filed suit in December

10

2020.[5] Thus, any claims based on Demastus's actions are time-barred and must be dismissed on this basis, as well.

### III. CONCLUSION

For the foregoing reasons, Desper's complaint will be dismissed in its entirety. An appropriate order will be entered.

Entered: November 1, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[5] Desper's complaint was received by the Clerk on December 15, 2020, but it indicates that it was signed on December 6, 2020, and the court deems it filed as of the earlier date.